# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KAHN and AARK ENTERPRISE LLC d/b/a MAULDIN'S, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>      Defendant. | Case No. 1:20-cv-00781-JEJ<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Hon. Chief Judge John E. Jones III |

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ...................................................................................1

II.  STATEMENT OF FACTS ......................................................................2

III. STATEMENT OF QUESTIONS INVOLVED .......................................4

IV.  ARGUMENT ..........................................................................................5

   A. Legal Standards ..................................................................................5

   B. Plaintiffs Sufficiently Plead a Direct Physical Loss of or Damage to Their Business Property, Which Does Not Require Structural Alteration ................7

      1. The Policy language is ambiguous and should be construed in favor of Plaintiffs' reasonable interpretation ..................................................7

      2. Recent COVID-19 insurance coverage decisions have found covered losses or held disposition at the pleading stage to be premature ...............10

      3. Plaintiffs need not allege structural alteration to state a claim for "direct physical loss of or damage to property" ........................................13

   C. Plaintiffs' Claims Are Covered by the Policy's Civil Authority Provision .......20

      1. Plaintiffs sufficiently allege physical loss or damage to other properties triggering civil authority coverage ................................................20

      2. The Policy's civil authority provision does not require a complete prohibition of access to Plaintiffs' business property ...................................23

   D. The Policy's Virus Exclusion is Inapplicable to Plaintiffs' Claims ..................24

      1. Defendant has failed to meet its burden of establishing that the virus exclusion applies to Plaintiffs' claims .............................................24

      2. Under the doctrine of efficient proximate cause, the Policy's civil authority provision provides coverage for Plaintiffs' claims.......................25

      3. Defendant's attempt to limit coverage with the virus exclusion should be barred by regulatory estoppel............................................................26

   E. Plaintiffs Sufficiently Plead Their Causes of Action ..........................................26

      1. Plaintiffs sufficiently plead the elements of each cause of action ..............26

      2. Defendant's motion improperly seeks adjudication of factual issues.........27

V.   CONCLUSION .......................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page**

*10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-cv-4418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) (<u>Exhibit I</u>) .........................................................13

*Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-cv-185, 2000 WL 726789 (D. Ariz. April 18, 2000) (<u>Exhibit Q</u>).........................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................6

*Azalea, Ltd. v. Am. States Ins. Co.*, 656 So. 2d 600 (Fla. Dist. Ct. App. 1995) .................16

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989.........................................................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................6

*Betz v. Erie Ins. Exch.*, 957 A.2d 1244 (Pa. 2008).........................................................8

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-cv-383, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) (<u>Exhibit E</u>) .........................................................11

*Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270 (Pa. Super. Ct. 1998) .................8

*Cleland Simpson Co. v. Fireman's Fund Ins. Co.*, 140 A.2d 41 (Pa. 1958) .........................22

*Commstop, Inc. v. Travelers Indem. Co.*, No. 11-cv-1257, 2012 WL 1883461 (W.D. La. 2012) (<u>Exhibit X</u>) .........................................................21

*Customized Distribution Servs. v. Zurich Ins. Co.*, 862 A.2d 560 (N.J. Super. Ct. App. Div. 2004).........................................................9

*Cyclops Corp. v. Home Ins. Co.*, 352 F. Supp. 931 (W.D. Pa. 1973) ...................................15

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) .........................................................5

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-cv-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (<u>Exhibit J</u>) .........................................................13

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) .........................................................28

*Estate of Neff v. Alterra Health Care Corp.*, 271 F. App'x 224 (3d Cir. 2008) ...........6, 7, 23

*Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552 (E.D.N.C. 2000).........................................................16

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020) ...............................................14

*Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001)..............19

*Gibson v. Secretary of U.S. Dep't of Housing and Urban Dev.*, 479 F. Supp. 3 (M.D. Pa. 1978).........................................................15

# TABLE OF AUTHORITIES
## (continued)                                                            Page

*Gorski v. Smith*, 812 A.2d 683 (Pa. Super. Ct. 2002) ........................................................26

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-cv-4418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (Exhibit K) .................................................................13

*Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 486 S.E.2d 249 (N.C. App. 1997) ...........................................................................................................................18

*Heller's Gas, Inc. v. Int'l Ins. Co.*, No. 15-cv-1350, 2017 WL 4119809 (M.D. Pa. Sept. 18, 2017) (Exhibit U) ........................................................................................................18

*Hetrick v. Valley Mut. Ins. Co.*, No. 2245, 1992 WL 524309 (Pa. Ct. Com. Pl. May 28, 1992) (Exhibit G) ......................................................................................................12

*Holiday Village East Home Owners Ass'n v. QBE Ins. Corp.*, 830 F. Supp. 2d 24 (D.N.J. 2011) ................................................................................................................................10

*Hughes v. Potomac Ins. Co. of D.C.*, 1999 Cal. App. 2d 239 (1962) .......................................17

*K.C. Hopps, Ltd. v. The Cincinnati Ins. Co., Inc.*, No. 20-cv-437, Dkt. 29 (W.D. Mo. Aug. 12, 2020) (Exhibit F) ...............................................................................................11

*Kelaher, Connell & Conner v. Auto-Owners Ins. Co.*, No. 19-cv-693, 2020 WL 886120 (D.S.C. Feb. 24, 2020) (Exhibit Z) ................................................................................22

*King v. N. River Ins. Co.*, 297 S.E.2d 637 (S.C. 1982) ..........................................................25

*Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996) ..............................7, 24

*Lipshutz v. Gen. Ins. Co. of Am.*, 96 N.W.2d 880 (1959) .......................................................19

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999) ..........................6

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974 (S.D. Fla. June 11, 2018) (Exhibit T) ......................................................................................................18

*Manpower Inc. v. Ins. Co. of Pa.*, No. 08-cv-85, 2009 WL 3738099 (E.D. Wis. Nov. 3, 2009) (Exhibit L) ........................................................................................................14

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Oh. Ct. App. 2008)............18

*Matzner v. Seaco Ins. Co.*, 9 Mass L. Rptr. 41, 1998 WL566658 (Mass. Super. Ct. Aug. 12, 1998) (Exhibit S) ...........................................................................................................17

*McMillan v. State Mut. Life Ins. Co.*, 922 F.2d 1073 (3d Cir. 1990)................................6, 8

*McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009) ..........................................................6

*Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005)..................13, 14, 27

# TABLE OF AUTHORITIES
## (continued)

Page

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010) ..................................................................................................18

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W. Va. 1998)...................................17

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. 01-cv-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) (Exhibit V)........................................................... 20, 23

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014) ..................................................................................................12

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11-cv-2520, 2015 WL 2226202 (N.D. Ill. Apr. 22, 2015) (Exhibit M)...........................................16

*Optical Servs., USA v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Ct. Aug. 13, 2020) (Exhibit B) .................................................................... 10, 27

*Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-cv-1932, 2016 WL 3267247 (D. Or. June 7, 2016) (Exhibit N) ...........................................................16

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999) ...............................................................5

*Owners Ins. Co. v. Clayton*, 614 S.E.2d 611 (S.C. 2005) ................................................ 7, 24

*Philadelphia Parking Auth. v. Federal Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) .........9

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002)............................................................................................. 12, 13, 15, 19

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. 01-cv-1362, 2002 WL 31495830 (D. Or. June 18, 2002) (Exhibit O) .................................................16

*Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, No. 20080358 (Pa. 1d Jud. Dist. Aug. 31, 2020) (Exhibit A)....................................................... 10, 27

*Rocks v. Philadelphia*, 868 F.2d 644 (3d Cir. 1989)..............................................................5

*Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020-CA-002424-B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) (Exhibit H)................................................................13

*Roundabout Theatres, Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1 (N.Y. App. Div. 2002) ..........12

*Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594 (E.D. Pa. 2013) ........................ 7, 24

*Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997)..................16

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 09-cv-2391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) (Exhibit W)...............................................................21

*Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434 (Mich. Ct. App. 1973) .................21

# TABLE OF AUTHORITIES
### (continued)                                                      Page

*Source Food Tech, Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006) ............ 8, 19

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, No. 05-cv-1315, 2007 WL 464715 (D. Or. Feb. 7, 2007) (Exhibit R) ........................................................................16

*State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132 (S.C. 2000) ...........................6, 7, 24

*Stone v. City of Philadelphia*, 153 A. 550 (Pa. 1931)........................................................25, 27

*Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-3127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) (Exhibit D)........................................................ 11, 15, 21, 23

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001) ......................................26

*Swarner v. Mut. Benefit Group*, 72 A.3d 641 (Pa. Super. Ct. 2013) .....................................24

*Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) (Exhibit Y) ............................................................................................................22

*Tatalovich v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 10724, 2003 WL 22844173 (Pa. Ct. Com. Pl. Oct. 10, 2003) (Exhibit AA) ....................................................................................25

*The Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815 (S.D. Iowa 2015)...................18

*Tomlinson v. Mixon*, 626 S.E.2d 43 (S.C. Ct. App. 2006).......................................................26

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-4908, 2018 WL 3829767 (C.D. Cal. July 11, 2018) (Exhibit P).................................................................16

*Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) ...........................................16

*United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128 (2d Cir. 2006) ..................................22

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................................................17

*Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012)..............18

*Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-1174, Dkt. 21 (M.D. Fla. Sept. 24, 2020) (Exhibit C) ....................................................................... 11, 27

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165 (3d Cir. 2013)..............................................................................................................................6

*Wagner v. Wagner*, 887 A.2d 282 (Pa. Super. Ct. 2005) .........................................................8

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. Super. Ct. App. Div. 2009)...........................................................................................................................9

## I.   <u>INTRODUCTION</u>

Plaintiffs Richard Kahn and AARK Enterprise LLC d/b/a Mauldin's ("Plaintiffs") owned and operated a family restaurant in Mauldin, South Carolina. When the COVID-19 pandemic hit the United States in March 2020, state and local authorities took action to restrict public gatherings, often by shutting down or significantly limiting the operation of non-essential businesses to combat the spread of COVID-19.

South Carolina issued such a "stay-at-home" order, effectively prohibiting occupancy and operation of all non-essential businesses, including in-person dining at Plaintiffs' restaurant. Due to these prohibitions by civil authority, Plaintiffs were unable to maintain their business operations and were forced to close down the restaurant. Like so many other restaurants and small businesses throughout the country, Plaintiffs' closure was permanent due to their extensive loss of business income.

This devastating result is precisely the type of covered loss that Defendant Pennsylvania National Mutual Casualty Company ("Defendant") agreed to cover when the parties entered into Plaintiffs' all-risk insurance policy (the "Policy"). Contrary to Defendant's assertions in the brief in support of its motion to dismiss (Dkt. 34; "Brief"), the type of loss Plaintiffs have experienced qualifies as a "direct physical loss of or damage to" their property, as well as to surrounding properties that led to civil authority closures, both expressly provided for in the Policy. Plaintiffs have adequately pleaded not only the direct physical loss or damage to their own business property, but that the civil authority orders triggered Plaintiffs' coverage under the Policy regardless of

Plaintiffs' own direct physical loss or damage. The parties' conflicting interpretations of these Policy terms demonstrates their ambiguity and gives rise to factual inquiries unripe for adjudication at this stage.

Defendant also fails to meet its burden to invoke the Policy's "virus exclusion," and that exclusion is nonetheless inapplicable because the civil authority closures, not the virus itself, were the "efficient proximate cause" of Plaintiffs' losses. In addition, the doctrine of regulatory estoppel prohibits Defendant from utilizing its virus exclusion to reduce covered losses under the Policy. Importantly, since Plaintiffs argue their losses were caused by a covered event (civil authority) and Defendant argues they were caused by an excluded event (virus), disposition at the motion to dismiss stage would be premature because the question of which event caused the loss is generally a question of fact.

## II.   <u>STATEMENT OF FACTS</u>

In their amended complaint (Dkt. 22; "FAC"), Plaintiffs allege that their small business was devastated by the impact of the COVID-19 pandemic. (*Id.* ¶ 2.) From early March 2020 through early April 2020, the state of South Carolina adopted restrictions on individuals and businesses that culminated in a "home or work" order that prohibited non-essential business operations, such as Plaintiffs' in-person dining operations. (*Id.* ¶¶ 22-29.) Ultimately, these restrictions by state civil authority left Plaintiffs no viable means to operate their business, and they were forced to shut down the restaurant while sustaining significant business losses. (*Id.* ¶¶ 30.)

Plaintiffs further allege that the Policy they purchased from Defendant was an "all risk" commercial policy that covered all claims unless explicitly excluded under the Policy. (*Id.* ¶¶ 14, 16.) The Policy provides for "Civil Authority" coverage, indicating:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(*Id.* ¶ 21.) Plaintiffs also allege that the Policy's virus exclusion in the Policy is inapplicable to Plaintiffs' claims because the orders of civil authority caused the losses. (*Id.* ¶ 38.) In addition, Plaintiffs allege that the virus exclusion stemmed from the fact that the insurance industry did in fact recognize viruses to be capable of causing "physical damage" to properties and sought to illegally reduce coverage. (*Id.* ¶ 39.)

Plaintiffs submitted a claim for their business losses to Defendant; Defendant swiftly denied Plaintiffs' claim. (*Id.* ¶¶ 3, 5.) In denying Plaintiffs' claim, Defendant asserted—as it does now in its Brief—that Plaintiffs' losses are not covered by the Policy because they were not the result of "direct physical loss of or damage to" Plaintiffs' business property, that the civil authority provision is inapplicable, and that the Policy's endorsement regarding claims arising from any "virus, bacterium or other microorganism" excludes Plaintiffs' claim. (*Id.* ¶ 5.)

Plaintiffs bring this action individually and on behalf of a nationwide class of similarly situated persons. (*Id.* ¶ 41.)

## III.   <u>STATEMENT OF QUESTIONS INVOLVED</u>

Defendant's motion to dismiss involves the following issues, without limitation:

A.     Do Plaintiffs sufficiently allege they suffered a "direct physical loss of or damage to" their business property that is covered under the Policy, given that the subject terminology is ambiguous and should be construed in Plaintiffs' favor?

<u>Answer</u>: Yes.

B.     Are Plaintiffs required to allege structural alterations to their business property to plead "direct physical loss of or damage to" that property?

<u>Answer</u>: No.

C.     Do Plaintiffs sufficiently allege that the civil authority provision of the Policy was triggered by state "stay at home" orders, given that those orders were the result of the rapidly spreading presence, contamination, and related human infections associated with COVID-19?

<u>Answer</u>: Yes.

D.     Are Plaintiffs required to allege a complete prohibition of access to or operation of their business property to trigger the Policy's civil authority provision?

<u>Answer</u>: No.

E.     Does Defendant fail to meet its burden to invoke the virus exclusion for Plaintiffs' claims, given principles of efficient proximate cause and regulatory estoppel?

<u>Answer</u>: Yes.

4

F.     Is the Policy language in dispute—*e.g.*, "direct physical loss of or damage to property"; "prohibits access"—sufficiently ambiguous to require a factual inquiry unripe for adjudication at the pleading stage, given that the plain and ordinary meaning of these Policy terms are subject to a reasonable interpretation by Plaintiffs that provides for coverage and contradicts Defendant's interpretation?

Answer: Yes.

G.     Does the efficient proximate cause doctrine require a factual inquiry, given that Defendant argues Plaintiffs' claims are not covered by the Policy due to the virus exclusion and Plaintiffs argue for coverage under the civil authority provision?

Answer: Yes.

H.     Do Plaintiffs sufficiently plead each of the elements of their three causes of action in the amended complaint, such that Defendant's motion to dismiss should be denied?

Answer: Yes.

## IV.   ARGUMENT

### A.   Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a court must accept as true the factual allegations in the complaint and draw all inferences derived therefrom in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016); *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). A complaint

must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A court should only grant a motion to dismiss under Rule 12(b)(6) if the factual allegations in the complaint are not sufficient to "'raise a right to relief above the speculative level.'" *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).

Insurance policies, including all-risk policies, should be interpreted according to their "plain and ordinary meaning." *Estate of Neff v. Alterra Health Care Corp.*, 271 F. App'x 224, 226 (3d Cir. 2008). Policy provisions that are ambiguous—*i.e.*, susceptible to two different, reasonable meanings—"must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." *McMillan v. State Mut. Life Ins. Co.*, 922 F.2d 1073, 1075 (3d Cir. 1990); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *see also State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 135 (S.C. 2000) ("Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation

6

most favorable to the insured will be adopted. . . . If there is no ambiguity, the insurance policy's terms must be interpreted and enforced according to their plain, ordinary, and popular meaning.") (citations omitted).

Conversely, exclusions to coverage are to be construed narrowly against the insurer, who "bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability.").

**B.    Plaintiffs Sufficiently Plead a Direct Physical Loss of or Damage to Their Business Property, Which Does Not Require Structural Alteration.**

**1.    The Policy language in ambiguous and should be construed in favor of Plaintiffs' reasonable interpretation.**

The language of the Policy should be interpreted according to its "plain and ordinary meaning." *Estate of Neff*, 271 F. App'x at 226. Both Pennsylvania and South Carolina law resolve any contractual ambiguities in favor of the insured. *Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) ("Ambiguous insurance policy provisions are construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.") (applying Pennsylvania law) (citations and quotations omitted); *Barrett*, 530 S.E.2d at 135. "The proper focus regarding issues of coverage under

insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. Ct. 1998). "[A] court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous . . . ." *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1253 (Pa. 2008).

The operative language in the Policy is "direct physical loss of or damage to property." (FAC ¶ 5.) Unlike many other terms in the Policy, Defendant chose not to define "direct physical loss" or "[direct physical] damage." Notably, this language contains the disjunctive "or," which necessarily means these terms are not redundant and "loss" must not be synonymous with "damage."[1] "Loss" not only means to misplace, but to be deprived of something, including the loss *of use* of one's property.[2]

As a threshold issue, Defendant's motion should be denied even if its interpretation of "direct physical loss of or damage to property" in its Brief is reasonable, provided Plaintiff's interpretation also is reasonable and thus ambiguity exists. *McMillan*, 922 F.2d at 1075. Here, Plaintiffs' loss of use of their restaurant can

---

[1]   *See* Disjunctive,   https://www.dictionary.com/browse/disjunctive   ("separating; dividing; distinguishing"). In its Brief (at 17), Defendant concedes this point, citing *Wagner v. Wagner*, 887 A.2d 282, 286 (Pa. Super. Ct. 2005).

[2] *See* Loss, https://www.dictionary.com/browse/loss; *see also Source Food Tech, Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (finding no covered loss where the policy language was "direct physical loss *to* property," not "loss *of* property").

reasonably be interpreted to be both "direct"[3] and "physical,"[4] as the civil authority directly prohibited Plaintiffs' use of the physical restaurant space, *i.e.*, a prohibition from operating their sit-down restaurant and allowing patrons to dine there.

Courts have previously concluded that the insurance term "physical loss" is ambiguous. *See, e.g.*, *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724, 735 (N.J. Super. Ct. App. Div. 2009) ("Since 'physical' can mean more than material alteration or damage, it was incumbent on the insurer to clearly and specifically rule out coverage in the circumstances where it was not to be provided, something that did not occur here.") (quoting *Customized Distribution Servs. v. Zurich Ins. Co.*, 862 A.2d 560, 566 (N.J. Super. Ct. App. Div. 2004) (internal quotations omitted)).

Here, the ambiguity of these central Policy terms defeats Defendant's argument that its favored interpretation of those terms is dispositive, when the ambiguity should favor Plaintiffs' reasonable interpretation as a matter of law—if the interpretative dispute should even be adjudicated as a matter of law. (*See* Brief at 9-10.) And the cases upon which Defendant relies are distinguishable. *See, e.g.*, *Philadelphia Parking Auth. v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 282-83 (S.D.N.Y. 2005) (plaintiff failed to allege that airport garage was inaccessible or closed when airplanes were grounded after the 9/11 terrorist attacks; additionally, the subject policy had a "physical alteration"

---

[3] Direct, https://www.dictionary.com/browse/direct ("inevitable; consequential").
[4] Physical, https://www.dictionary.com/browse/physical ("of or relating to that which is material").

requirement); *Holiday Village East Home Owners Ass'n v. QBE Ins. Corp.*, 830 F. Supp. 2d 24, 27 n.4 (D.N.J. 2011) (plaintiff failed to allege a covered "collapse," a term which was expressly defined in the policy and held to be unambiguous).

### 2. Recent COVID-19 insurance coverage decisions have found covered losses or held disposition at the pleading stage to be premature.

There have been more decisions specific to COVID-19 insurance claims for business interruption than those Defendant cites in its Brief. (*See generally* Brief at 14-15.) Numerous state courts within this Circuit have recently denied motions to dismiss and demurrers on the basis that—in the context of the COVID-19 pandemic and related civil authority orders—the interpretation of the disputed insurance language necessitates factual determinations that would be premature at the pleading stage. *See Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, No. 20080358, at 1 n.1 (Pa. 1d Jud. Dist. Aug. 31, 2020) (Exhibit A) (in overruling demurrer, holding that "it would be premature for this court [to] resolve the factual determinations put forth by defendants to dismiss plaintiff's claims. Taking the factual allegations made in plaintiff's complaint as true, as this court must at this time, plaintiff has successfully pled to survive this stage of the proceedings."); *see also Optical Servs., USA v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20, Tr. at 24-26 (N.J. Super. Ct. Aug. 13, 2020) (Exhibit B) (denying defendant's motion to dismiss and ordering "issue-oriented discovery" and holding that "each of the respective arguments advanced by the parties requires a fact-sensitive analysis

wherein the respective parties have failed to present a sufficient record before this Court [without any discovery] for a legal determination of their respective positions.").[5]

In addition to its decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-3127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) (Exhibit D), which Defendant cites (Brief at 15), a Missouri district court has denied motions to dismiss in two additional cases, holding that "there remain unresolved factual questions as to the scope, effect, applicability, and impact of the Stay Home Orders—questions neither side has fully briefed and that are better suited for resolution at a later stage of litigation once discovery has taken place." *See Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-cv-383, 2020 WL 5637963, at *8 (W.D. Mo. Sept. 21, 2020) (Exhibit E); *see also K.C. Hopps, Ltd. v. The Cincinnati Ins. Co., Inc.*, No. 20-cv-437, Dkt. 29 at 1-2 (W.D. Mo. Aug. 12, 2020) (Exhibit F) (order denying motion to dismiss on same grounds as *Studio 417*).

Defendant's attempt to distinguish *Studio 417* from the instant case misses the mark. (Brief at 15-16.) That court held that the plaintiffs' "harm is tethered to their alleged physical loss caused by COVID-19 and the Closure Orders." *See Studio 417*, 2020 WL 4692385, at *6-7 (Ex. D) (also finding independent civil authority coverage).[6] Further, the Third Circuit has held there does not have to be actual contamination or

---

[5] Also recently, a Florida district court similarly held that "several arguably ambiguous aspects of the Policy make determination of coverage inappropriate at this stage." *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-1174, Dkt. 21 at 6 (M.D. Fla. Sept. 24, 2020) (Exhibit C).

[6] *See infra* Sections IV.C (civil authority coverage).

adulteration for a property to be insured against loss, provided a physical cause imminently threatens the property's function. *See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002); *see also Hetrick v. Valley Mut. Ins. Co.*, No. 2245, 1992 WL 524309, at *3 (Pa. Ct. Com. Pl. May 28, 1992) (Exhibit G) (finding coverage would apply at residence if outside oil spill rendered property temporarily uninhabitable).

Defendant's assertion of an "interpretational problem arising from the [Policy's] 'Period of Restoration' clause" (Brief at 16) requires a premature factual inquiry as to when and whether such a period begins and ends in the context of the ongoing COVID-19 pandemic.[7] And Defendant's subsequent argument regarding that clause (Brief at 18-19) relies on inapposite authority. *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 324, 328 (S.D.N.Y. 2014) (finding no coverage resulted from preemptive electrical shutdown to combat flooding that had previously occurred, not a future flood threat; the court recognized that "the critical policy term at issue, requiring 'physical loss or damage,' does not require that the physical loss or damage be tangible, structural or even visible."); *Roundabout Theatres, Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 8 (N.Y. App. Div. 2002) (finding no coverage where road closure prevented theatre access and the policy did *not* contain a civil authority coverage provision, but actually a provision *excluding* losses arising from civil authority closures).

---

[7] *See infra* Section IV.E.2 (factual inquiries premature).

Similarly, the COVID-related decisions on which Defendant relies (Brief at 14-15) are inapposite to the instant case for various reasons. *See generally Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020-CA-002424-B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) (Exhibit H) (a summary judgment decision following a fully developed record); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-cv-4418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) (Exhibit I) (applying California policy to enforce virus exclusion, distinguishable from Pennsylvania law)[8]; *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-cv-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (Exhibit J) (same re: Texas).

### 3.   Plaintiffs need not allege structural alteration to state a claim for "direct physical loss of or damage to property."

"[T]here is a genuine issue of fact whether the functionality of the [plaintiffs'] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable." *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826-27 (3d Cir. 2005) (discussing *Port Auth. of N.Y. & N.J.*, 311 F.3d 226); *see also Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-cv-4418, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (Exhibit K) (finding plaintiff incurred "physical loss or damage to" its premises and indicating that "courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct physical loss or damage") (collecting cases under Pennsylvania, Massachusetts, and Virginia law).

---

[8] *See infra* Section IV.D.2 (efficient proximate cause).

In *Hardinger*, the Third Circuit overturned a grant of summary judgment to the defendant-insurer, finding that bacterial contamination could constitute direct physical loss to the property because, despite the lack of physical damage, it rendered the property too dangerous to inhabit. 131 F. App'x at 825; *see also Manpower Inc. v. Ins. Co. of Pa.*, No. 08-cv-85, 2009 WL 3738099, at *3 (E.D. Wis. Nov. 3, 2009) (Exhibit L) (finding business income coverage based on inability to use building that was unstable but had not suffered visible damage).

That COVID-19 may not permanently endure at a physical location is not dispositive to the determination of physical loss or damage. Recently, the Pennsylvania Supreme Court found that COVID-19 "spreads primarily through person-to-person contact, has an incubation period of up to fourteen days, one in four carriers of the virus are asymptomatic, and the virus can live on surfaces for up to four days." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 889-90 (Pa. 2020). "Thus," the Court concluded, "any location . . . where two or more people can congregate is within the disaster area." *Id.* Defendant's reference to *DeVito*'s four-day surface life finding (Brief at 14 n.5) ignores the fact that, unlike other pathogens that are more transient or for which there are curative measures, COVID-19 has remained and will remain a dangerous threat to all people and properties while the pandemic persists. Even if a restaurant regularly cleans all its surfaces, any patron visiting thereafter can reintroduce COVID-19 and contaminate the property anew.

Defendant's focus on the Plaintiffs' actual restaurant building is a similar misdirection. (*See* Brief 12-15.) In reality, Plaintiffs' business property—the property to which Plaintiffs' legal rights are attached—is more accurately attributed to Plaintiffs' *use* of the premises as a restaurant. Defendant's argument that Plaintiffs must show a demonstrable, physical alteration to the property's actual structure is an unjustifiably narrow interpretation of the Policy that ignores the "loss of" language. *Studio 417, Inc.*, 2020 WL 4692385, at *5 (Ex. D) ("'[P]hysical loss' is not synonymous with physical damage. . . . [E]ven absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose.").

As in *Studio 417*, a multitude of courts within this Circuit and throughout the nation have held that an event rendering a property unusable for its intended purpose can cause "direct physical loss of or damage to" the property even if the structure itself is not altered or harmed. *See, e.g., Port Auth. of N.Y. & N.J.*, 311 F.3d at 236 (holding that physical loss or damage results from asbestos "contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility."); *Gibson v. Secretary of U.S. Dep't of Housing and Urban Dev.*, 479 F. Supp. 3, 10 (M.D. Pa. 1978) (finding coverage for lost property where an insured's home was unusable for its intended purposes as a residence); *Cyclops Corp. v. Home Ins. Co.*, 352 F. Supp. 931, 937 (W.D. Pa. 1973) (finding

policyholder entitled to coverage for loss of business income where vibration of motor,

without apparent damage, caused it to be shut down).[9]

---

[9] *See also Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (noting that the majority of cases nationwide find that physical damage to property is not necessary where, at least, the property has been rendered unusable by a covered cause of loss); *Azalea, Ltd. v. Am. States Ins. Co.*, 656 So. 2d 600, 601-02 (Fla. Dist. Ct. App. 1995) (finding coverage where, as a result of an unknown substance released into a sewage treatment plant causing a shutdown, and the city's order relating to same, the plant could not be used for its intended purpose); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property."); *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11-cv-2520, 2015 WL 2226202, at *9 (N.D. Ill. Apr. 22, 2015) (Exhibit M) ("Where a general all-risk commercial or homeowner's policy insures against both 'loss' or 'damage' to an existing structure, 'physical' damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss."); *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-cv-1932, 2016 WL 3267247 (D. Or. June 7, 2016), vacated by stipulation of the parties, No. 15-cv-1932 (D. Or. Mar. 6, 2017) (Exhibit N) (holding that structural damage was not a requirement for physical damage, that "certainly air is not mental or emotional, nor is it theoretical" but a physical thing affected by wildfire smoke, and that "[e]ven though the loss or damage was not structural or permanent, the property experienced a loss of 'essential functionality.'") (citations omitted); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. 01-cv-1362, 2002 WL 31495830, at *8 (D. Or. June 18, 2002) (Exhibit O) (the word "physical" limits coverage only in the sense that it "'negates any possibility that the policy was intended to include 'consequential or intangible injury,' such as depreciation in value, within the term 'property damage.'"); *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-4908, 2018 WL 3829767, at *3-4 (C.D. Cal. July 11, 2018) (Exhibit P) (holding that that "direct physical loss of or damage to" encompassed "loss of use" of the property and ultimately held that property that was not physically damaged still constituted physical loss of insured property); *Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 557 (E.D.N.C. 2000) ("[T]he court finds that no requirement for physical loss to the property is required under the contract of insurance in order to trigger business interruption coverage . . . ."); *Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-cv-185, 2000 WL 726789, at *2 (D. Ariz. April 18, 2000) (Exhibit Q) ("'physical damage' is not restricted to the physical destruction of harm . . . but includes loss of access, loss of use, and loss of functionality"); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, No. 05-cv-1315, 2007 WL 464715 (D. Or. Feb. 7, 2007) (Exhibit R) (finding "direct physical loss

In addition, courts often recognize the fact-finding results of legislatures and executive agencies. *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). With regard to the COVID-19 pandemic, many state and local authorities have issued determinations of fact that unequivocally indicate COVID-19 causes direct physical loss of or damage to property.[10]

---

of or damage to" property when it could not be used for its "ordinary expected purpose" even though it could still be used for other purposes); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) (finding premises unusable by rockslide risk constituted direct physical loss even without any structural damage); *Hughes v. Potomac Ins. Co. of D.C.*, 1999 Cal. App. 2d 239, 248-49 (1962) ("Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner."); *Matzner v. Seaco Ins. Co.*, 9 Mass L. Rptr. 41, 1998 WL566658, at *3 (Mass. Super. Ct. Aug. 12, 1998) (Exhibit S) ("(T)he phrase 'direct physical loss or damage' *is* ambiguous in that it is susceptible of at least two different interpretations. One includes only tangible damage to the structure of insured property. The second includes a wider array of losses") (collecting cases).

[10] *See, e.g.*, City of Durham NC, Second Amendment to Declaration of State of Emergency, at 8 (effective Mar. 26, 2020) (prohibiting entities that provide food services from allowing food to be eaten onsite "due to the virus's propensity to physically impact surfaces and personal property") (https://durhamnc.gov/DocumentCenter/View/30043/City-of-Durham-Mayor-Emergency-Dec-Second-Amdmt-3-25-20_FINAL); N.Y.C. Emergency Exec. Order No. 100, at 2 (Mar. 16, 2020) (COVID-19 "physically is causing property loss and damage") (https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf); N.Y.C. Emergency Executive Order No. 103, at 1 (Mar. 25, 2020) (civil actions to prevent the spread of COVID-19 "have led to property loss and damage") (https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-103.pdf); Napa Cty. Cal. Health & Human Service Agency, Order of the Napa Cty. Health Officer (Mar. 18, 2020) (issuing restrictions based on spread of "and the physical damage to property caused by" COVID-19) (https://www.countyofnapa.org/DocumentCenter/View/16687/3-18-2020-Shelter-at-Home-Order); Harris Cty. Tex. Office of Homeland Security & Emergency Mgmt.,

Notably, Defendant relies entirely on noncontrolling and distinguishable authorities—most of which are summary judgment or post-trial decisions based on an evidentiary record—to argue that a "demonstrable, physical alteration of the property" is required for Plaintiffs' loss to be covered. (Brief at 12-15.)[11]

---

Order of Cty. J. Lina Hidalgo, at 2 (Mar. 24, 2020) (COVID-19 can cause "property loss or damage") (https://www.taa.org/wp-content/uploads/2020/03/03-24-20-Stay-Home-Work-Safe-Order_Harris-County.pdf); City of Oakland Park Fla. Local Public Emergency Action Directive, at 2 (Mar. 19, 2020) (COVID-19 is "physically causing property damage") (https://oaklandparkfl.gov/DocumentCenter/View/8408/Local-Public-Emergency-Action-Directive-19-March-2020-PDF); Colorado Dep't of Pub. Health & Env't, Updated Public Health Order No. 20-24, at 1 (Mar. 26, 2020) (emphasizing the danger of "property loss, contamination, and damage" due to COVID-19's "propensity to attach to surfaces for prolonged periods of time") (https://www.pueblo.us/DocumentCenter/View/26395/Updated-Public-Health-Order---032620).

[11] *See The Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 823-24 (S.D. Iowa 2015) (decision on cross-motions for summary judgment involving claim for relocation expenses caused by flooding, where authorities only warned of the flood risk but did not order relocation); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 778-79 (2010) (operative policy language was "direct physical loss to business personal property," not "direct physical loss of or damage to property"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143 (Oh. Ct. App. 2008) (post-trial decision based on expert testimony about the temporary nature of mold damage; the court also found no structural damage requirement under Ohio law to show "physical loss"); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (Exhibit T) (holding that the restaurant was not "uninhabitable or unusable . . . the restaurant remained open every day . . . and there is no evidence that dust had an impact on the operation other than requiring daily cleaning."); *Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 572-73 (6th Cir. 2012) (affirming summary judgment after a fully-developed record and a failure by plaintiff to present evidence supporting physical loss); *Heller's Gas, Inc. v. Int'l Ins. Co.*, No. 15-cv-1350, 2017 WL 4119809 (M.D. Pa. Sept. 18, 2017) (Exhibit U) (summary judgment decision where plaintiff failed to present evidence of the underground damage claimed); *Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 486 S.E.2d 249 (N.C. App. 1997) (affirming summary judgment where plaintiff "neither

Defendant relies on yet another inapposite appellate opinion affirming summary judgment under Minnesota law, where a truckload of beef was held up at the Canadian border. *See Source Food Tech, Inc.*, 465 F.3d at 838. The court found that the plaintiff's concession that the beef itself was not contaminated or damaged was dispositive because the subject policy language was "direct physical loss *to* property," not "*of* property." *Id.* Minnesota state courts have found physical loss or damage absent structural damage. *See, e.g., Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 149 (Minn. Ct. App. 2001) (direct physical loss or damage may exist without destruction or structural damage of the property); *Lipshutz v. Gen. Ins. Co. of Am.*, 96 N.W.2d 880, 885-86 (1959) (finding direct loss to insured's grocery store when windstorm caused damage to public utility serving area even though power lines connected to the premises remained intact).

Defendant's characterization of *Port Authority* also lacks merit. (*See* Brief at 22-23.) There, the court found that actual contamination of the property need not exist for coverage if a physical cause imminently threatens a property's function or habitability, even from "sources unnoticeable to the naked eye." *Port Auth. of N.Y. & N.J.*, 311 F.3d at 235. Defendant effectively concedes as much when quoting that decision, because COVID-19 did in fact "make [Plaintiffs' restaurant] unusable." *Id.* at 236. Here,

---

alleged nor offered proof" of lost income when a snowstorm made car dealership inaccessible).

Plaintiffs' restaurant was not "functional" as Defendant argues (Brief at 22); like in *Port Authority*, the restaurant lost its utility, leading directly to its permanently closure.

## C. Plaintiffs' Claims Are Covered by the Policy's Civil Authority Provision.

### 1. Plaintiffs sufficiently allege physical loss or damage to other properties triggering civil authority coverage.

The elements for triggering civil authority coverage require that the insured suffer a loss of business income: (1) caused by an action of a civil authority that (2) prohibits access to the described premises (3) due to a direct physical loss or damage to property other than at the described premises, and (4) the loss of or damage to the property other than at the described premises must be caused by or result from a "covered cause of loss." *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. 01-cv-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002) (Exhibit V).

Here, all of these elements are satisfied. Defendant does not argue that the South Carolina orders (FAC ¶¶ 22-30) are not actions of civil authority, so there is no dispute as to the first element. Second, those orders clearly prohibited access to Plaintiffs' business property by Plaintiffs' customers, the source of Plaintiffs' business income. (*Id.*) Third, Plaintiffs allege that the orders were issued as a result of COVID-19 proliferation near and around their restaurant. (*Id.*) Finally, much like how Plaintiffs' losses should be covered under the Policy, the losses by surrounding business amount to "direct physical loss" under the Policy. (FAC ¶¶ 29-30, 34, 37.)

The *Studio 417* court reached the same conclusion, holding that the plaintiffs' allegations of actual loss were "applicable to other property" and that the civil authority orders included "property other than" the plaintiffs' premises. 2020 WL 4692385, at *7 (Ex. D). Other courts also have found non-structural damage sufficient to trigger civil authority coverage. *See, e.g.*, *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 437 (Mich. Ct. App. 1973) (concluding that physical damage to the premises was not a prerequisite for the payment of benefits under the business-interruption policy).

Defendant's authority against civil authority coverage is distinguishable on the facts or the applicable policy language.[12] In *Ski Shawnee*, the policy only provided coverage for "a complete inability to access, or a forced closing by a civil authority." *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 09-cv-2391, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010) (Exhibit W). There, the bridge serving as the primary route to the plaintiff's ski area collapsed, but it could be reached by other roads and there was no civil authority closure of the actual ski area. *Id.* at *1.[13] In *Syufy Enterprises*, the court found no civil authority coverage because the city curfew was a preemptive measure to prevent a future threat—looting and riots—that had not yet happened. *Syufy Enters. v.*

---

[12] Defendant's assertion that "the Virus Exclusion limits coverage under the Civil Authority coverage" (Brief at 24 n.10) ignores the efficient proximate cause doctrine applicable to such a "covered event versus excluded event" dispute and the resulting need for a factual inquiry. *See infra* Section IV.D.2.

[13] The court in *Commstop* dealt with a similar deficiency, where the plaintiff's convenience store lost business due to a road closure, but access to the store itself was never prohibited by civil authority. *Commstop, Inc. v. Travelers Indem. Co.*, No. 11-cv-1257, 2012 WL 1883461, at *9 (W.D. La. 2012) (Exhibit X).

*Home Ins. Co. of Ind.*, No. 94-cv-756, 1995 WL 129229, at *1-2 (N.D. Cal. Mar. 21, 1995) (Exhibit Y). Here, COVID-19 was not a "potential threat" at the time of the civil authority orders, but an active pandemic that had already spread throughout Plaintiffs' community, state and the entire country. (FAC ¶¶ 22-29.)

Defendant's reliance on the *United Air Lines* case suffers from similar flaws. There, the airline was not entitled to civil authority coverage when the government grounded flights following the 9/11 terrorist attacks. *United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128, 130 (2d Cir. 2006). Not only are these circumstances factually distinguishable like in *Syufy Enterprises*, but the policy language in *United Air Lines* also materially differed: that civil authority provision required the insured's loss to be the "direct result of damage to adjacent premises" *Id.* at 129. Here, the Policy's provision is much broader, providing Plaintiffs coverage for their losses "due to direct physical loss of or damage to property, other than at the described premises." (FAC ¶ 21.)[14]

---

[14] Defendant's remaining authority is also distinguishable due to more restrictive civil authority provisions. *Cleland Simpson Co. v. Fireman's Fund Ins. Co.*, 140 A.2d 41, 43 (Pa. 1958) (limited to "actual loss . . . as a direct result of a peril insured against access to the premises described"); *Kelaher, Connell & Conner v. Auto-Owners Ins. Co.*, No. 19-cv-693, 2020 WL 886120, at *5 (D.S.C. Feb. 24, 2020) (Exhibit Z) ("requires access to the insured property to be 'prohibited by order of civil authority because of damage or destruction of property adjacent to the described premises by the perils insured against.'").

2.      **The Policy's civil authority provision does not require a complete prohibition of access to Plaintiffs' business property.**

In *Studio 417*, the court found that the closure orders sufficiently triggered the subject policy's civil authority provision by mandating "'that all inside seating is prohibited in restaurants,' and that 'every person in the State of Missouri shall avoid eating or drinking at restaurants,' with limited exceptions for 'drive-thru, pickup, or delivery options.'" 2020 WL 4692385, at *7 (Ex. D). Plaintiffs allege identical restrictions on their restaurant in South Carolina's closure orders and they need not plead an absolute prohibition on business operation or entry to invoke the Policy's civil authority coverage, especially considering the devastating and permanent impact on their business. (FAC ¶¶ 22-30.)

The circumstances in *Narricot* also were analogous, where local civil authorities prohibited operation of an industrial plant in the wake of Hurricane Floyd. 2002 WL 31247972, at *4 (Ex. S). As held in *Narricot*, the phrase "prohibits access" does not require that the civil authority completely forbid occupancy of the premises or even all business operation; once again, the Policy terms are subject to reasonable interpretation based on their "plain and ordinary meaning." *Estate of Neff*, 271 F. App'x at 226. To "prohibit" does not just mean to "forbid"; it can also mean to "hinder," or "to cause delay, interruption, or difficulty in," or "to be an obstacle or impediment."[15] No

---

[15] Prohibit, https://www.dictionary.com/browse/prohibit; Hinder, https://www.dictionary.com/browse/hinder.

language in the Policy requires a *complete* prohibition on access to Plaintiffs' business property, which is why the Policy's "Extra Expense" provision provides for "minimiz[ing] the suspension of business," and "suspension" is explicitly defined as "the *slowdown or* cessation of business activities" (FAC ¶¶ 4, 17, 19 (emphasis added).) Once again, ambiguities in Policy language must be construed against Defendant to provide Plaintiffs with an opportunity to develop a factual record. *Sciolla*, 987 F. Supp. 2d at 599; *Barrett*, 530 S.E.2d at 135.

**D.    The Policy's Virus Exclusion is Inapplicable to Plaintiffs' Claims.**

   **1.    Defendant has failed to meet its burden of establishing that the virus exclusion applies to Plaintiffs' claims.**

Under both Pennsylvania and South Carolina law, courts must strictly construe an exclusion against the insurer who is trying to rely upon it. *Swarner v. Mut. Benefit Group*, 72 A.3d 641, 645 (Pa. Super. Ct. 2013) ("Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured."); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability."). The insurer bears the burden of proving the applicability of a coverage exclusion. *See Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996). Here, Defendant's failure to shoulder that burden at the pleading stage is glaring. Its only supporting authority to invoke the virus exclusion is the *Diesel Barbershop*

24

case, which as previously discussed,[16] applied inapposite Texas law to enforce a similar exclusion.

### 2. Under the doctrine of efficient proximate cause, the Policy's civil authority provision mandates coverage for Plaintiffs' claims.

As Defendant knows from previous litigation but failed to address in its Brief, the "efficient proximate cause" doctrine—a *factual* inquiry—dictates that "if a risk insured against was the proximate cause of a loss, the insured may recover even though a peril excluded from coverage may have contributed thereto." *Tatalovich v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 10724, 2003 WL 22844173, at *1 (Pa. Ct. Com. Pl. Oct. 10, 2003) (Exhibit AA) (collecting cases); *see also King v. N. River Ins. Co.*, 297 S.E.2d 637, 638 (S.C. 1982) ("[I]t is generally sufficient to prove the event insured against was the efficient cause of the loss, even though not the sole cause.").

Here, the civil authority orders prohibiting the operation of Plaintiffs' business were the primary and "efficient proximate cause" of Plaintiffs' business loss (FAC ¶¶ 22-30, 37-38); the causal relationship between Plaintiffs' loss of use and COVID-19 itself is much more remote.[17]

---

[16] *See supra* Section IV.B.2 (related COVID-19 insurance decisions).

[17] While Plaintiffs have sufficiently alleged civil authority to be the efficient proximate cause warranting coverage here, such a determination is premature at the pleading stage. *See generally Stone v. City of Philadelphia*, 153 A. 550, 552-53 (Pa. 1931).

3.     **Defendant's attempt to limit coverage with the virus exclusion should be barred by regulatory estoppel.**

Defendant should be estopped from invoking the virus exclusion. As alleged in Plaintiffs' amended complaint, Defendant—through the Insurance Service Office ("ISO")—made statements to insurance regulators that the adoption of virus exclusion provisions was solely to clarify coverage and not reduce it, yet now it is invoking that exclusion to limit coverage. (FAC ¶¶ 14-21, 31-32, 37-39.) Such deceptive insurance practices should be estopped. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001) (reversing and remanding dismissal of insured's complaint to allow insured to present factual evidence in support of estoppel). Here, Defendant's motion should be denied and Plaintiffs afforded discovery to establish a record as to whether Defendant's invocation of the virus exclusion violates regulatory estoppel principles.

E.     **Plaintiffs Sufficiently Plead Their Causes of Action.**

1.     **Plaintiffs sufficiently plead the elements of each cause of action.**

To state a claim for breach of contract, a plaintiff must plead (1) the existence of a contract and its essential terms, (2) the breach of that contract, and (3) resulting damages. *See Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002); *Tomlinson v. Mixon*, 626 S.E.2d 43, 49 (S.C. Ct. App. 2006) (vacated on other grounds). Here, Plaintiffs have met that pleading burden: Plaintiffs' allegations as to existence of the Policy and the terms therein are not disputed, Plaintiffs have sufficiently alleged that Defendant's denial of Plaintiffs' insurance claim breached that agreement by improperly applying

and/or interpreting those terms, and Plaintiffs have sufficiently alleged direct physical loss of their restaurant business as a result of that breach. (FAC ¶¶ 5-6, 13-21, 29-40.)

Defendant also fails to establish any insufficiency in Plaintiffs' claims for bad faith and declaratory relief, as its motion relies entirely on its defective breach of contract arguments to assert Plaintiffs' other two causes of action also fail. (Brief at 32-33.) Defendant's motion should be denied as to all three causes of action.

### 2.   Defendant's motion improperly seeks adjudication of factual issues.

As held by numerous courts in this Circuit, as well as some considering claims arising from related COVID-19 insurance denials, Defendant's motion should be denied because genuine issues of fact exist that should not be adjudicated at the pleading stage. *See supra Ridley Park Fitness, LLC*, No. 20080358, at 1 n.1 (Ex. A); *Optical Servs., USA*, No. BER-L-3681-20, Tr. at 24-26 (Ex. B); *Urogynecology Specialist of Fla. LLC*, No. 20-cv-1174, Dkt. 21 at 6 (Ex. C); *Stone*, 153 A. at 552-53; *see also Hardinger*, 131 F. App'x at 826-27 (presence of bacteria in well water was a "genuine issue of fact whether the functionality of the [plaintiff's] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable").

### V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' amended complaint should be denied in its entirety.[18]

---

[18] To the extent the Court is inclined to grant any aspect of Defendant's motion, Plaintiffs respectfully request leave to amend. *See Dole v. Arco Chem. Co.*, 921 F.2d 484,

Respectfully submitted,

Dated:  September 30, 2020

/s/ Bradley K. King

Bradley K. King (admitted *pro hac vice*)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585

Benjamin F. Johns
*BFJ@chimicles.com*
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: 610-642-8500
Fax: 610-649-3633

*Counsel for Plaintiffs and the proposed class*

---

486-87 (3d Cir. 1990) (courts should use "strong liberality" in considering leave to amend) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

## **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing brief contains

7,490 words, as verified by the word-count feature on Microsoft Word.


Dated:  September 30, 2020          */s/  Bradley K. King*
                                    Bradley K. King

## **CERTIFICATE OF SERVICE**

I, Bradley K. King, counsel for Plaintiffs, hereby certify that, on September 30, 2020, a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with exhibits was filed through the Court's CM/ECF System, which automatically generates a notice of electronic filing to all counsel of record.


Dated:  September 30, 2020            */s/ Bradley K. King*
                                      Bradley K. King